UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

ALISHA SHEERAHAMAD, natural law guardian on behalf of her daughter CG a minor child,

Plaintiff,

-against-

THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK AND THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, KATRINA DUNCAN, individually and on behalf of the Department of Education of New York, DIANA LAGNESE individually and on behalf of the Department of Education of New York, ANDREA MITCHELL individually and on behalf of the Department of Education of New York, MS. SCHEKLIER individually and on behalf of the Department of Education of New York, ALISON ARDUINI individually and on behalf of the Department of Education of New York, KETURAH HARDY individually and on behalf of the Department of Education of New York,

Defendants.
--------------------------------------------------------------X

**22 Civ.**

**COMPLAINT**

**PRELIMINARY STATEMENT**

1. CG, a minor child has suffered an unrelenting and shockingly cruel campaign of bullying, harassment, and discrimination.

2. On a near-constant basis, CG was attacked, mocked, and condemned by peers at her school. They spread vicious rumors and humiliating sexualized gossip about her. They isolated and shunned her.

3. Over the course of two years, CG and her mother continually begged Defendants for help.

4. School staff flouted their legal obligation to document and investigate the bullying of CG. When CG. or mother reported the harassment themselves, the school failed to investigate or

conducted half-hearted investigations and failed to take any action against the students who were bullying her.

5. The school also refused to recognize the profoundly deleterious effect that this traumatic bullying had on CG's educational environment

6. As the adults at her school stood by and allowed the bullying to continue, CG became increasingly disconsolate. She became so anxious about the prospect of attending school

7. Despite constant complaints and pleas for help, the bullying continued until CG, and her mother was forced to remove her from the school.

8. No student should ever be forced to live through what CG endured at PS 135.

9. Defendants' failures are morally and legally inexcusable and render them liable under federal, state, and local law.

**JURISDICTION, VENUE, AND CONDITIONS PRECEDENT TO SUIT**

10. The Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a). The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

11. Venue lies in the Southern District of New York under 28 U.S.C.§ 1391(b)(1) because Defendants Board of Education of the City School District of the City of New York and New York City Department of Education reside in this district within the meaning of 28 U.S.C. § 1391(c)(2) and, on information and belief, all defendants reside in the State of New York.

12. On August 13, 2021, Plaintiff served a notice of claim pursuant to Education Law § 3813 and General Municipal Law § 50-e upon Defendants Board of Education of the City School District of the City of New York and New York City Department of Education by email to ServiceECF@law.nyc.gov, the email address established by the New York City Law Department

for service of process on entities for which the Law Department is authorized to accept service.

13. On August 20, 2021, Plaintiff served an amended notice of claim pursuant to Education Law § 3813 and General Municipal Law § 50-e upon Defendants Board of Education of the City School District of the City of New York and New York City Department of Education by email to ServiceECF@law.nyc.gov, the email address established by the New York City Law Department for service of process on entities for which the Law Department is authorized to accept service

14. More than thirty days have elapsed since the notice of claim was served, and payment thereof has been neglected or refused.

15. Defendants served a demand for an examination of Plaintiff under General Municipal Law § 50-h and an examination has been conducted.

**THE PARTIES**

16. Defendants Department of Education of the City of New York and the Board of Education of the City School District of the City of New York (hereinafter collectively referred to as "Defendant or DOE") are charged by law with responsibility for the operation, management, and control of the New York City public education and is within the jurisdiction of this Court.

17. Plaintiff Alisha Sheerahamad, natural law guardian (mother) on behalf of her daughter CG a minor child (hereinafter "Plaintiff") was a student at PS 135 located in Queens, New York.

18. Alisha Sheerahamad is the mother of CG who was born in 2009.

19. CG was a 5th-grade student at PS 135, located at 207-11 89th Ave, Queens Village, NY 11427. For about two school years, CG was bullied and harassed at school by several students. Despite the mother's efforts to get the bullying and harassment to stop, it continued unabated as set forth below.

20. DOE implements DASA in New York City schools on behalf of BOE. Under DOE

Chancellor's Regulation A-832, which concerns Student-to-Student Discrimination, Harassment, Intimidation and/or Bullying, a school principal or his/her designee must enter all reports of bias-based harassment or bullying into DOE's Online Occurrence Reporting System ("OORS") within one school day of receiving the report and must promptly investigate all such reports. The principal or designee "must take immediate steps and appropriate follow-up action to ensure that the conduct has stopped," provide appropriate interventions and supports to the victim, and impose appropriate discipline on the perpetrators of bias-based harassment or bullying. The regulation specifically provides that "neither mediation nor conflict resolution is under any circumstances an appropriate intervention for bullying or intimidation."

21. Katrina Duncan is a DOE employee who served as her teacher during the 2019-2020 school year at PS 135.

22. Diana Lagnese is a DOE employee who, at all relevant times, served as the Principal at PS 135 an Intermediate School in Queens.

23. Andrea Mitchell is a DOE employee who, at all relevant times, served as the Assistant Principal at PS 135, an Intermediate School in Queens.

24. Alison Arduini is a DOE employee who, at all relevant times, served as a School Counselor at PS 135 in Queens.

25. Keturah Hardy is a DOE employee who, at all relevant times, served as the District Superintendent in Queens, NY.

26. Ms. Scheklier (first name unknown) is a DOE employee who served as her teacher during the 2019-2020 school year at PS 135 in Queens.

27. Diana Lagnese is a DOE employee who, at all relevant times, served as Principal of Intermediate School 135 in Queens. Upon information and belief, under DASA, as the principal

of I.S. 135, Lagnese reviewed and approved the result of her designees' investigations into all reported incidents of bias-based discrimination, harassment, intimidation, and bullying of D.S. See N.Y. Education Law § 13(1)(d).

## FACTUAL STATEMENT

28. In September of 2019, CG experienced her first menstrual cycle in P.S.13SQ. Another classmate, MP, witnessed her accident in class and created a rumor within the classroom stating, "CG wears dollar store pads" When CG found out what was said about her the next day, she came home crying, and they stopped talking. The mother spoke to MP's mother, she said she would speak to her child, but the events continued to unfold without either parent of MP monitoring or correcting her offensive behavior.

29. When the mother approached Defendant Duncan (CG's teacher) about the situation, she did not provide any consequences for MP's actions and allowed this situation to further escalate. Defendant Duncan was also a former teacher of MP's older sister, and is very friendly with their mother, DP.

30. MP told her classmates EK, SM, SM, LP, NM false rumors stating CG had spoken badly of them behind their back. Due to this, CG was being called a "bitch" in school by the girls, was stared at rudely, pushed, threatened with violence, and harassed daily by all seven girls.

31. After mentioning this to Defendants Lagnese, (Principal) Mitchell and. Arduini, (Assistant Principals) spoke to the bullies and three of them but failed to discipline any of the bullies during this time, although the bullies had threatened, harassed, and physically harmed CG.

32. In February 2020, the mother went to a parent-teacher conference and met with Ms. Scheklier and another teacher.

33. The mother explained to the teachers again that her child is being bullied, which they

admitted they already knew and eventually pointed out in the meeting that her grades have dropped during the times she experienced the bullying by MP, LP, SM, N, and EK. Ms. Scheklier stated her child needed Special Education while already knowing she was being bullied daily by multiple children.

34. The mother explained to the teachers again the difficulties she has faced from being bullied, which caused her grades to drop. Both teachers did not discuss CG's promotion in doubt letter that was sent late, making her at risk of being in summer school and held back. Instead, the teachers suggested CG may need special education, while already aware of the daily harassment CG was facing in school by multiple children, providing no disciplinary actions to the bullies and turning a blind eye to the events in front of them.

35. On February 24th, 2020, CG's grandfather and the mother met with Defendants Lagnese, Mitchell, Duncan, and Scheklier about the continuing bullying and the promotion in doubt letter. The mother was not notified about her child being at risk of being in summer school or left back during the parent-teacher conferences. There were no disciplinary actions against the bullies after bringing it to the attention of the head of school staff again.

36. Instead, Principal Lagnese and Assistant Principal Ms. Mitchell suggested CG switch her classroom. When she switched her class, the bullying by the same girls further escalated by recording CG during lunch and harassing her in the lunchroom. Assistant Principal Mitchell refused to check the phones of the bullies when bringing this to their attention.

37. On February 26, 2020, CG's mother wrote a letter to Principal Lagnese & staff, stating she did not want her child in the MSBK program, and in the same Saturday class as the students who were bullying her. CG's mother explained that the students continued to taunt her. There were no disciplinary actions of the bullies during this time.

38. On February 29, 2020, CG's mother met with AP Mitchell to change CG's Saturday class due to being called names, pushed, and threatened. Defendant Mitchell said she does not want to punish E, N, and D, for their wrongful actions due to MP being the one that's spreading the false rumors about CG. There were no disciplinary actions for any of the students during this time.

39. On February 29th, 2020, CG and her mother met with Ms. Mitchell before Saturday class. Ms. Mitchell refused to check the children's phones who were recording CG on school grounds the day before, saying there was no proof for her to check the bullies' phones, and claiming it was too late, that CG had to tell her right then and there.

40. Defendant Mitchell claimed it was too late even though CG said she saw them holding out their phones pointing towards her and laughing during lunch. Defendant Mitchell claimed when she spoke to the students, they told her it was over, and they ended their problems with CG, instead of listening to CG in a time of need and providing disciplinary action to the offending students who harassed her daily. When CG's mother addressed the lunch staff about the bullying and begged for them to resolve the issue and make sure Chanelle didn't get attacked, the lunch staff told her that Chanelle had to face the wall at lunch, and not turn around. There were no consequences faced for these students who were recording her during lunch, by Defendants Mitchell and Lagnese.

41. Defendant Mitchell said she could not do anything to MP because MP told Defendant Mitchell the bullying was over, thus the harassment continued.

42. On March 12, 2020, CG's mother emailed Defendant Diana Lagnese in reference to the continuous harassment. Principal Lagnese did not discuss any consequences for the actions created by the bullies, she only referred CG' s mother to the guidance counselor, Ms. Arduini.

43. On March 12, 2020, Defendant Arduini replied to CG's mother's email with a solution for CG to sit in her office during lunch due to the harassment CG faced in the lunchroom, but no

disciplinary actions were taken against the bullies by Defendant Lagnese.

44. On March 16th, 2020, the COVID-19 pandemic caused all schools to remote learning.

45. SM and SM were making multiple videos on YouTube mentioning CG's name, commenting on CG's page, making physical threats claiming they will "Kill her", using offensive sexual language towards CG, and slandering CG's name on YouTube and Roblox.

46. SM also made a video mentioning CG and M's names stating she feels bad for M for being related to CG. SM made multiple videos and hate pages speaking about CG, using her photos, with the intent to defame CG's character, cause fear, emotional & psychological stress

47. Another student, LP also made offensive language and cursed at CG on YouTube, with the intent to defame CG's character and to cause fear, and emotional and psychological stress.

48. During each incident, CG's mother reported the offensive language and behavior of the cyberbullies to YouTube, YouTube kept the bullies' accounts active and did not make them delete their disturbing videos in which they slandered CG's name.

49. After CG's mother notified the school with further information about the bullying made to CG online, MP began singing about performing sexual acts on her family members as well as sticking up her middle finger pretending to shoot a gun with her middle finger on Tik-Tok.

50. On June 13th, 2020, A Roblox account named "Alex and Juliet <3" by "Morencyl07" made a shout on their profile stating, "girl if your Ch@nelle get out you B". The group had seven members in it. The description of this profile stated, "This group is about Ch@nelle that give we hate so if I see her, I will pop her to the fall."

51. On June 15th, 2020, A Roblox account named "Alex and Juliet <3" "Morency107" commented saying "If you hate Ch@nelle, join the group"

52. The group had seven members in it. The description of the group stated, "This group is

about Ch@nelle that give we hate so if I see her, I will make her stop being a creep."

53. SM, J, MP, and MP's sister would stalk CG on Roblox and follow CG around in the game. Roblox allowed these accounts to remain active, although it was clearly a hate page.

54. On June 18, 2020, CG's mother filed a complaint with the New York City Department of Education directly, providing all evidence of harassment and bullying made online and in school.

55. On June 18, 2020, CG's mother received an email from Superintendent Ms. Keturah Hardy after she submitted her complaint to the Department of Education website. She explained that there were no disciplinary actions that were taken against the bullies during each incident her child faced, and CG's mother submitted all evidence to the Board of Education of her child being stalked, threatened, and harassed on YouTube and Roblox.

56. Defendant Lagnese responded that they are in the process of investigating.

57. Defendant Lagnese has been investigating this matter the entire school year with proof of the bullying towards CG by several students but took no action to discipline them.

58. On June 18, 2020, CG's mother received an email from Defendant Lagnese, stating she would have guidance counselor Defendant Arduini call her about the incidents involving CG. Ms. Arduini asked CG's mother to submit proof via text yet could not provide any further help on this matter.

59. Defendant Lagnese has turned a blind eye to the abuse faced on school grounds which has led to CG being the victim of cyberbullying, stalking, impersonating, physically threatened, kidnapped, and killed online.

60. On June 25th, 2020, CG's mother received a letter from The Department of Education stating her child was the victim of behavior that may have violated Chancellor's Regulation A-831.

61. The Department of Education directed CG's mother to contact the school, the school did not provide any further information as far as the actions that would be taken against the bullies,

62. CG had received Student to Student Discrimination, Harassment, Intimidation and Bullying for the entire school year and after the school year, causing her grades to drop and her being in constant fear. Due to the Department of Education's failure to provide any disciplinary action, the bullying evolved into the cyber world causing emotional and psychological stress.

63. SM created a TikTok post relating to physically harming CG. These harmful posts remained active on Tik-Tok as of July 21, 2021.

64. SM posted on TikTok what she wrote to CG on YouTube stating:

a) "you lil bich I'll fucking kill you bich you think you can talk shit about me you got the wrong person with your skinny ass I'll beat you and your mom."

65. Also, posted on TikTok:

a) Sephora Monjuene also used sexual language toward CG stating, "Oh you want di** that's why your bich", along with physical threats stating "I really want to fight you"

b) "Me about to fight CG" then posting a photo of a broken tree branch, captioning it "her"

66. Sephora Monjuene publicly made physical threats to CG with the intent to defame CG's character, remain in fear of safety, and cause psychological stress.

67. When CG was threatened to be kidnapped and killed, she feared for her safety and is suffering from psychological and emotional distress.

68. CG' s mother contacted the 103rd Precinct regarding the death threats being made and the officer stated there was nothing they can do about the cyberbullying because the children are minors.

69. On July 1, 2021, Sarah Morency continues to upload unwanted photos of CG on Sarah's

TikTok account. CG has not consented to any photos of CG being shared on TikTok by another person other than herself, such pictures of CG are not permitted to be posted and are in violation of CG's privacy.

70. On July 29th, 2021, CG's mother discovered there was a hate page created by the bullies. The hate page for CG named "@chenellehatepage" was linked to a page created by and labeled in the bio the names of MP, SM, SM, WK and N from P.S. 135Q, and where they provided CG's phone number on one of the photos in the hate page. The hate page for CG was also followed by some of the bullies.

71. The bullies from P.S. 135Q took unwanted pictures of CG when they used to be friends and would Facetime her in the past. They posted unwanted and never seen photos onto Instagram and Tik-Tok. The photos are captioned:

"Fake friends always finish last fu** her a**" "Her tiktok 1i1 bich"

"Biiiiiiiiiichhhh hope you see this" "Fake friends"

72. The bullies from P.S. 135Q have slandered CG's name, have used her photos to defame her character, and are falsely using her identity on Instagram. Instagram refuses to delete this page although she is under the age of 13, and CG's mother have reported it as her parent.

73. The majority of the names are the same bullies reported throughout the entire school year and no disciplinary action was taken.

74. There were no consequences for the bullies when they verbally, physically, psychologically & emotionally abused CG at P.S. 135Q. If disciplinary action had been taken, the bullying would have stopped.

75. CG has been now an outcast and was excluded from her lunch period by Principal Lagnese and Ms. Arduini. Rather than imposing disciplinary action against the bullies such as suspensions

or detentions of the bullies, the staff put CG in the guidance counselor's office, as if she is the one being punished for being bullied.

76. The bullies have commented on CG's Tiktok account, created Tiktok videos slandering CG's name, and threatened to kidnap and kill CG on Tiktok.

77. CG is suffering from depression, anxiety attacks, stress, lack of sleep, lack of energy to get things done, and fear to this day. CG is afraid to form new friendships and interact with other children because of these incidents that are still occurring.

78. CG is less communicative since this entire situation began. CG spends most of her time alone in her room rather than interacting with her family, friends, and pet.

79. This situation has led CG's mother to homeschool her child for two years. CG still cries to this day about being harassed in person and online. Such actions by all the bullies named, have left CG feeling violated, and in continual emotional distress.

80. On July 30, 2021, Sarah Morency continued to speak of CG in her bio stating, "F you CG with your mom"

81. As a result of the foregoing, the Department of Education of the City of New York, the City of New York, the City School District of the City of New York, their agents, servants, and/or employees negligently failed to supervise its students at PS 135. In addition, DOE negligently trained and the Administrators at PS 135 including Principal Lagnese, and AP Ms. Mitchell.

82. The DOE owed a duty to supervise its employees by training its employees in the workplace, including supervising them and making sure they discipline students when students bully other students.

83. As a proximate result of Defendant's negligence, Defendant's actions resulted in CG being subjected to continuous bullying which would have been a crime under New York State Penal Law

such as First Degree Harassment-Exhibiting behavior that puts the victim in reasonable fear of injury; Harassment in the Second Degree-causing alarm to the victim for no legitimate reason, Aggravated Harassment in the Second Degree-contacts the victim with the intent to abuse/annoy, Defamation- Both Libel & Slander, Stalking and Cyber Bullying.

84. Further, the DOE owed a duty to CG to supervise its employees by training its employees in methods that would prevent students from bullying other students.

85. The DOE owed a duty to the CG to supervise its employees including training the staff regarding bullying, and the impact it has on a student such as severe depression and anxiety. The DOE owed a duty to the CG to supervise its employees, including training employees within the administrative positions (Principal Lagnese, AP Mitchell, School Psychologist, Ms. Arduini, etc.) as to appropriate actions to take. In addition, the DOE negligently failed to supervise the CG's teachers, with respect to training and did not implement policies and procedures to prevent students from bullying other students.

86. The DOE failed to train its employees regarding the appropriate action, once the CG's mother notified the DOE regarding the bullying by students of the CG; negligently failed to supervise its employees by not training them to take immediate action to investigate the mother's complaints once the mother reported the abuse; negligently failed to supervise its employees by not training its employees to take immediate action to discipline the offending students once the CG's mother reported the bullying; The DOE breached foregoing duties of owed to the CG which resulted in her being damaged.

87. Defendant failed to take the proper action to prevent further bullying violated the Dignity for All Students Act (DASA), New York State Education Law, Article 2, by failing to train staff and educate students concerning cyberbullying, and thus is responsible for the perpetration of the

violent threats and other conduct by PS 135 students against CG. DASA sets forth duties owed by schools to its students. By failing to train staff properly Defendant breached that duty.

88. The DOE breached the duty owed to the plaintiff, which unreasonably endangered the plaintiff's physical safety and caused the plaintiff to fear for her physical safety, the conduct was extreme and outrageous, there is a causal connection between the conduct and CG's extreme emotional distress; and the CG has suffered severe and extreme emotional distress. The DOE conduct was negligent and such negligence cause CG emotional distress.

89. There has been a complete and total lack of a response to this very grave situation which has endangered CG's well-being.

90. As a result, CG has suffered significant psychological harm. It was reasonably foreseeable to the DOE that students would take the actions they did in causing harm to CG by failing to discipline the offending students.

91. Said occurrences and the injuries resulting to the minor CG therefrom, were caused solely by the negligence of the DOE herein as hereinabove alleged, without any negligence on the part of CG or her mother contributing thereto.

92. The psychological damage and damage to her reputation caused by the DOE is foreseeable and profound. As a result of the foregoing, Plaintiff has been damaged. The psychological damage and damage to CG's reputation caused by the DOE is foreseeable and profound.

## FIRST CLAIM FOR RELIEF
## Title IX–DOE

93. Plaintiff realleges the preceding paragraphs as if set forth here.

94. At all relevant times, CG was a student enrolled in a school controlled, operated, and overseen by DOE.

95. At all relevant times, the DOE received federal financial assistance.

96. The DOE owed a duty to protect CG from gender-based discrimination, including sexual and gender-based harassment, bullying, intimidation, and a hostile educational environment.

97. The DOE discriminated against CG by subjecting her to different treatment on the basis of her gender, including by subjecting her to sexual and gender-based harassment, bullying, intimidation, and a hostile educational environment.

98. The DOE failed to prevent, respond to, adequately investigate, and/or appropriately resolve and remedy instances of gender discrimination against CG, including sexual and gender-based harassment, bullying, intimidation, and a hostile educational environment.

99. The DOE was deliberately indifferent to the risk that other students would discriminate against, harass, bully, and intimidate CG and subject her to a hostile educational environment.

100. The DOE had actual knowledge that other students, as well as staff, were subjecting CG to gender-based discrimination, harassment, bullying, intimidation, and a hostile educational environment, but failed to protect CG.

101. CG was deprived of two educational benefits as a result of the harassment: (1) a supportive, scholastic environment free of gender discrimination and harassment and (2) the ability to complete her education at the junior high school, instead of being driven to leave.

102. As a direct and proximate result of DOE's unlawful discrimination, CG suffered and will continue to suffer harm, including but not limited to a loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damages.

103. As a result of the foregoing, Defendant DOE violated Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681 et seq.

**SECOND CLAIM FOR RELIEF**
**TITLE VI-NATIONAL ORIGIN-DOE**

104. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

105. Title VI prohibits discrimination on the basis of an individual's national origin in programs and activities receiving federal financial assistance. At all relevant times, the DOE received federal financial assistance.

106. Plaintiff's national origin is Guyana and as such, is a member of a protected class.

107. The DOE was deliberately indifferent to the risk that other students would discriminate against, harass, bully, and intimidate CG and subject her to a hostile educational environment.

108. The DOE had actual knowledge that other students, as well as staff, were subjecting CG to national origin discrimination, harassment, bullying, intimidation, and a hostile educational environment, but failed to protect CG.

109. CG was deprived of two educational benefits as a result of the harassment: (1) a supportive, scholastic environment free of discrimination and harassment and (2) the ability to complete her education at the high school, instead of being driven to leave.As a direct and proximate result of DOE's unlawful discrimination, CG suffered and will continue to suffer harm, including but not limited to a loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damages.

110. As result of the foregoing, Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(d), et seq. ("Title VII")

**THIRD CLAIM FOR RELIEF**
**NEGLIGENT SUPERVISION OF STUDENTS-ALL DEFENDANTS**

111. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

112. Defendants owed a duty of care to CG as a student at PS 135Q.

113. At all relevant times, Defendants were under a legal duty to adequately supervise GS and the rest of the students in their charge at PS 135Q and to exercise such care of GS and his fellow students as a parent of ordinary prudence would observe in comparable circumstances.

114. Defendants breached the duty of care that they owed to CG by allowing her to be bullied, harassed, and assaulted, failing to provide her with necessary and proper care and supervision, failing to detect and remedy the bullying, harassment, and assault of CG by other students, and failing to properly supervise CG and the students responsible for bullying, harassing, and assaulting him.

115. These breaches of Defendants' duty and care proximately caused CG's damages and injuries as described herein.

116. Defendants DOE and BOE are vicariously liable for the tortious conduct of their employees as alleged herein.

117. CG has undergone significant emotional trauma as a result of the DOE's actions and negligence.

118. There has been a complete and total lack of a response to this very grave situation which has endangered CG's well-being.

119. As a result of this bullying which has been allowed to continue unabated by the school, CG has suffered significant psychological harm.

120. It was reasonably foreseeable that it was reasonably foreseeable to Defendant that students would take the actions causing harm to Plaintiff.

121. Said occurrences and the injuries resulting to the minor Plaintiff therefrom, were caused solely by the negligence of the Defendant herein as hereinabove alleged, without any negligence on the part of said Plaintiff contributing thereto.

122. The psychological damage and damage to her reputation caused by Defendant is foreseeable and profound.

123. CG had to leave school and completely socially isolated from her peers. In short, she is deprived a normal childhood as result of the actions and inactions taken by Defendants.

124. As a result of the foregoing, Plaintiff has been damaged.

125. The psychological damage and damage to his reputation caused by the Defendants are foreseeable and profound. As a result of the foregoing, Plaintiff has been damaged.

**FOURTH CLAIM FOR RELIEF**
**NEGLIGENT SUPERVISION OF STAFF DEFENDANTS DOE, LAGNESE, MITCHELL, AND HARDY**

126. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

127. Defendants owed a duty to CG to supervise its employees by training its employees in methods that would not be considered bullying of students.

128. Defendants owed a duty to Plaintiff to supervise its employees including the training of teachers regarding bullying, recognizing severe depression and anxiety in students, and appropriate measures to take if it is observed including advising the CSE committee and Administrators.

129. The Defendants negligently failed to supervise CG's teachers, with respect to training and observing how to respond to bullying and failed to supervise its Administrators by not having policies and procedures in effect for its employees, concerning bullying.

130. The Defendants negligently failed to supervise its employees by not training its employees regarding the appropriate action, once the mother notified the DOE regarding the bullying by students; negligently failed to supervise its employees by not training them to take immediate action to investigate the Plaintiff and mother's complaints once the they reported the abuse; negligently failed to supervise its employees by not training its employees to take immediate action

to separate CG from the offending students, once the bullying was reported and failing to discipline the students who were bullying CG.

131. Defendants breached its duty to adequately train and supervise its staff, supervise and educate its students as to DASA, and is liable for foreseeable injuries proximately caused by the absence of adequate training and supervision.

132. Defendants had actual and constructive notice of prior similar conduct. The psychological damage caused to CG is foreseeable and profound. As a result of the foregoing, Plaintiff has been damaged.

133. DASA sets forth duties owed by schools to its students. By failing to train staff properly Defendants have breached their duty.

134. Plaintiff was harmed by Defendants' failure to properly train its staff.

135. The psychological damage and damage to his reputation caused by Defendant is foreseeable and profound. As a result of the foregoing, Plaintiff has been damaged.

**FIFTH CLAIM FOR RELIEF**
**N.Y. EXECUTIVE LAW § 296(6) AGAINST ALL DEFENDANTS**

136. Plaintiff realleges the preceding paragraphs as if set forth here.

137. DOE is an educational institution as defined by New York Executive Law § 292(37).

138. During all times relevant to this claim, Defendants Duncan, Lagnese, Mitchell, Scheklier and Arduin employed by DOE.

139. Defendants Duncan, Lagnese, Mitchell, Scheklier and Arduin are not "school officers" within the meaning of N.Y. Education Law § 2 and claims against them are therefore not subject to the requirements of N.Y. Education Law § 3813(1).

140. DOE discriminated against CG, in violation of N.Y. Executive Law § 296(4), by subjecting her to different treatment on the basis of her gender and national origin, including by subjecting

her to harassment, bullying, intimidation, and a hostile educational environment; by failing to prevent, respond to, adequately investigate, and/or appropriately resolve and remedy instances of unlawful discrimination; and by exhibiting deliberate indifference to the risk that he would be subjected to unlawful discrimination and a hostile educational environment.

141. Defendants Duncan, Lagnese, Mitchell, Scheklier and Arduin aided and abetted DOE's unlawful discrimination against CG by failing to prevent, respond to, adequately investigate, and/or appropriately resolve and remedy instances of unlawful discrimination, including bullying, harassment, intimidation, and a hostile educational environment on the basis of sexual orientation and gender identity or expression. As a direct and proximate result of the Defendants' unlawful discrimination.

142. The conduct was continuing in nature.

143. CG. suffered and will continue to suffer harm, including but not limited to loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional physical, and psychological distress, and other damages.

144. As a result of the foregoing, Defendants violated the NYS Executive Law§ 296.

**SIXTH CLAIM FOR RELIEF**
**N.Y.C. ADMIN. CODE § 8-107(4) AGAINST ALL DEFENDANTS**

145. Plaintiff realleges the preceding paragraphs as if set forth here.

146. During all times relevant to this claim, Defendants Duncan, Lagnese, Mitchell, Scheklier, Arduine and Hardy were agents or employees of a place or provider of public accommodation within the meaning of New York City Administrative Code § 8-107(4)(a).

147. By their actions as alleged herein, Defendants denied to and withheld from CG the full and equal enjoyment of educational services because of her gender and national origin.

148. As a direct and proximate result of Defendants' unlawful conduct, CG suffered and will

continue to suffer harm, including but not limited to loss of educational opportunities; humiliation; embarrassment; reputational harm; emotional physical, and psychological distress; and other damages.

**SEVENTH CLAIM FOR RELIEF**
**NEW YORK CIVIL RIGHTS LAW §§ 40-C AND 40-D**
**AGAINST DEFENDANTS DUNCAN, LAGNESE,**
**MITCHELL, SCHEKLIER, ARDUINI AND HARDY**

149. Plaintiff realleges the preceding paragraphs as if set forth here.

150. The acts and omissions by Defendants Duncan, Lagnese, Mitchell, Scheklier, Arduine and Hardy alleged herein subjected CG to discrimination and harassment in the exercise of her civil right to education under New York law because of her and gender and national origin.

151. The acts and omissions alleged herein aided and incited unlawful discrimination against and harassment of CG by others in the exercise of his civil right to education under New York law because of her gender and national origin.

152. The violations of CG's rights under the New York Civil Rights Law are the actual, direct, and proximate cause of the injuries and damages suffered by CG as alleged herein.

**EIGHTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983- FAILURE TO TRAIN**

153. Plaintiff realleges the preceding paragraphs as if set forth here.

154. The conduct of the named defendants created a pervasive and offensive hostile sexual atmosphere in violation of CG's exercise of her rights to the Constitution of the United States, and deprived her of constitutional rights as guaranteed by law.

155. As a result of these wrongful actions, plaintiff, CG has suffered trauma, pain and distress.

156. Defendants are liable for the wrongful conduct of their employees, as the decision makers conceived and/or failed to create and implement a policy and practice of properly training bus personnel and employees to protect CG.

157. Defendants are liable for the wrongful conduct of the School District's employees, as the decision makers failed to train and supervise its supervisors, agents and employees to avoid such pervasive and offensive hostile conduct against known, vulnerable minor, female students, such as CG.

158. Defendants are liable for the wrongful conduct of the School District's employees, as the decision makers permitted and condoned a policy and practice of not properly training employees who were charged with the care and custody of students. As a result of defendants' wrongful conduct, plaintiff suffered the harm and damages averred to above.

**NINTH CLAIM FOR RELIEF-42 U.S.C. § 1983**
**BREACH OF A SPECIAL CUSTODIAL ARRANGEMENT-DOE ONLY**

159. Plaintiff realleges the preceding paragraphs as if set forth here.

160. The conduct of the named defendants was based on action or inaction of the defendants which was deliberately indifferent to and in violation of rights guaranteed to CG by law.

161. The actions of the defendant are proximately related to the deprivation and loss of her constitutional rights as guaranteed by law.

162. As a result of this wrongful actions, C.G. has suffered trauma and distress.

163. Defendant DOE is liable for the wrongful conduct of the School District employees, as the decision makers conceived and implemented a policy and practice of failing to train personnel and employees to protect CG's rights.

164. Defendant DOE is liable for the wrongful conduct of the employees, as the decision makers failed to train and supervise its supervisors, agents and employees to avoid such pervasive and offensive hostile conduct against known vulnerable female students.

165. Defendant is liable for the wrongful conduct of their employees, as the decision makers permitted and condoned a policy and practice not properly training said persons. As a result of defendant's wrongful conduct, plaintiff suffered the harm and damages.

**JURY DEMAND**

**PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY**.

WHEREFORE, the Plaintiff herein, ALISHA SHEERAHAMAD, natural law guardian on behalf of her daughter CG a minor child, demands judgment as follows:

a. Judgment for economic losses and compensatory damages in an amount in excess of the limit for compulsory arbitration.

b. Punitive and exemplary damages as permitted by law against the individual defendants;

c. For the violation of any claim providing for equitable relief, appropriate injunctive

d. An award of reasonable costs and attorneys' fees under 42 U.S.C. § 1988, 29 U.S.C. § 794a, New York Executive Law § 297, New York City Administrative Code § 8-502(g), and/or any other applicable law;

e. Pre- and post-judgment interest to the fullest extent permitted by law; and

f. Any additional relief the Court deems just and proper.

Dated: New York, New York
June 10, 2022

Respectfully submitted,

STEWART LEE KARLIN
*Attorneys for Plaintiff*
111 John Street, 22nd Floor
New York, NY 10038
(212) 792-9670